UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Sebastian Castro**

    **v.**　　　　　　　　　　　Case No. 10-cv-554-PB
　　　　　　　　　　　　　　　Opinion No. 2012 DNH 124
**Charles Panica et al.**


## MEMORANDUM AND ORDER

Sebastian Castro was injured when Manchester police officer Charles Panica tackled him during the course of an arrest. Castro brought a variety of state and federal claims against Panica, several other officers who were present when Castro was arrested, the Chief of Police, and the City of Manchester. Defendants have challenged all of Castro's claims in a motion for summary judgment. As I explain below, Castro has waived many of his claims by failing to defend them in response to defendants' motion for summary judgment. On the remaining claims, I conclude that the excessive force and the assault and battery claims against Panica survive summary judgment, as does the claim that the City is vicariously liable for the assault and battery.


## I.  BACKGROUND

Around midnight on August 15, 2009, a police officer escorted Castro and three of his friends (Marin, Harrold, and Jubrey) from

1

the Black Brimmer Bar in Manchester following a dispute with a
bouncer.  They joined a crowd that had gathered outside the bar.  At
least five police officers, including two on horseback, were
attempting to disperse the crowd.  Castro and his friends began to
walk away from the bar as directed.

As they were passing by several officers, Castro directed swear
words at the officers' horses, which upset the officers.  The group
continued walking at a slow pace, with Castro ahead of his friends.
Marin then heard one of the officers say "you're arrested for
disorderly conduct."  He turned around because he did not know to
whom the officer was speaking.  Castro continued walking at the same
pace.  Officer Panica then sprinted toward Castro and tackled him
from behind at full speed in a football-style maneuver, slamming
Castro's head on the pavement.  Castro was immediately rendered
unconscious.  Officer Steven Flynn arrived to assist Panica in
handcuffing the unconscious Castro while Marin urged them to call an
ambulance.  A mounted officer approached the scene as Panica and
Flynn were handcuffing Castro.  The horse lost its footing trying to
climb onto the sidewalk and hit Officer Panica on the forehead.[1]

Castro was transported by ambulance to the emergency room.  A
CAT scan showed that he had suffered a concussion.  The cut on his

---

[1] The officers speculate that the horse also hit Castro.  They state
that Castro was conscious when Panica "transitioned him to the
ground" and was in fact resisting arrest.  Only after the horse hit
Panica did the officers notice Castro's head injury.

head was approximately four inches long.  Four staples were required to close the laceration.

Castro was discharged to police custody the next morning.  He was charged with disorderly conduct, resisting detention, and resisting arrest.  The charges were ultimately dismissed.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence submitted in support of the motion must be considered in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first identify the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

### III.  ANALYSIS

Castro asserts eight federal and state claims against a variety of defendants, all stemming from his core contention that Officer Panica used excessive force to arrest him.  Defendants seek summary judgment on all counts.  As I explain in the next section, Castro has effectively waived a number of the claims by failing to defend or even mention them in his objection to defendants' motion.  I then address the three remaining claims: the excessive force, the assault and battery, and the negligent training and supervision claims.

### A.  Waiver

According to the First Circuit's well-established "raise-or-waive" rule, all claims not raised, plead, or argued with sufficiency are waived.  See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 259-60 (1st Cir. 1999); McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991).  The rule "applies with equal force to situations where a plaintiff properly raises an issue in his complaint, but then fails to adequately address it as part of his summary judgment argument."  Rocafort v. IBM Corp., 334 F.3d 115, 121 (1st Cir. 2003); see Higgins, 194 F.3d at 260 ("A party who aspires to oppose a summary motion must spell out his arguments squarely and distinctly, or else forever hold his peace."); Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 678 (1st Cir. 1995) ("If a party fails to assert a legal reason why summary judgment should not

4

be granted, that ground is waived and cannot be considered or raised
on appeal." (internal quotation marks omitted)).

Here, the raise-or-waive rule applies in two instances.  First,
in his objection to the motion, Castro fails to make any response to
defendants' request for summary judgment on the following five
counts: (1) a Section 1983 malicious prosecution claim; (2) a state
law malicious prosecution claim; (3) a Fourth Amendment illegal
seizure claim; (4) a state law false arrest claim; and (5) a Section
1983 failure to train and supervise claim.  Nor has Castro produced
any evidence tending to substantiate the claims.  Castro's failure
to respond in any way to defendants' motion on the five counts is
tantamount to a waiver.  See Rocafort, 334 F.3d at 121.
Accordingly, I grant defendants' motion as to those unaddressed
claims.

Second, Castro argues that the unlawful conduct relevant to the
three claims that he does defend is Officer Panica's football-style
tackle that hurled Castro onto the pavement, causing major trauma to
his head.  He denies that a police horse caused his injury.
Accordingly, he does not argue that Officers Marc LaChance and Scott
Tardiff, the two mounted officers whom he sued, had any connection
with his injuries.  Nor does he argue or present any evidence that
Officer Flynn, the defendant who assisted Panica in handcuffing
Castro, acted unlawfully.  Castro has therefore waived any claims

5

against those officers, and I grant summary judgment on all counts for Officers Flynn, LaChance, Tardiff, and any "unknown police officers."  See Rocafort, 334 F.3d at 121; Grenier, 70 F.3d at 678.

The claims that Castro has not waived, then, are as follows: (1) the excessive force claim against Panica (Count I); (2) the assault and battery claim against Panica and the related vicarious liability claim against the City (Count II); and (3) the negligent training and supervision claim against the Chief of Police and the City (Count VIII).  I address those claims in turn.

**B.   Excessive Force Claim**

Officer Panica argues he is entitled to summary judgment on the excessive force claim because the force he used to effect Castro's arrest was objectively reasonable.  Alternatively, he contends he is entitled to qualified immunity on the claim.  Neither argument is persuasive in light of Castro's version of the events.

**1.   Reasonableness of Force Used**

When law enforcement officers arrest an individual, they violate his rights under the Fourth Amendment if they use more force than is objectively reasonable under the circumstances.  Graham v. Connor, 490 U.S. 386, 396-97 (1989).  Determining whether the force used to effect an arrest is objectively reasonable requires a fact-specific inquiry of the totality of the circumstances in the particular case, "including the severity of the crime at issue,

6

whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007) (quoting Graham, 490 U.S. at 396).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.  The court must also take into account "the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation" and that "[n]ot every push or shove . . . violates the Fourth Amendment."  Id. at 396-97 (internal quotation marks and citation omitted).  Because the reasonableness test is an objective one, the officer's subjective motivation that prompted the use of force is inconsequential.  Id. at 397.

For the purpose of Panica's summary judgment motion, I must accept as true the witness testimony that Castro has produced and I must draw all reasonable inferences in his favor.[2]  See Navarro, 261

---

[2] For the most part, defendants argue that the force Panica used was reasonable in light of the police officers' version of the events, which differs from the account provided by Castro's witnesses in several key respects.  The officers state that Castro began a "slow run" after Panica told him to stop several times; that Panica "transitioned" Castro to the ground without injuring his head; and that Castro then resisted arrest.  Because Castro has controverted

F.3d at 94.  Viewing those facts from the perspective of a
reasonable officer, a jury could find that Panica's use of force was
unreasonable.  According to Castro's witnesses, Panica used
substantial force to arrest Castro and caused him significant
injury.  He sprinted toward Castro, who was merely walking away, and
tackled him from behind at full speed in a football-style maneuver
that hurled Castro from the sidewalk onto the street.  Castro's head
hit the pavement with sufficient force to render him unconscious.
The trauma resulted in a concussion and a four inch long laceration
that required four staples.

   The three Graham factors all suggest that the force was
unreasonable.  See 490 U.S. at 396.  First, the crime that Castro
reportedly committed – disorderly conduct for directing swear words
at the police officers' horses – is a relatively minor infraction.
See id.  Second, there is no indication that Castro posed an
immediate threat to the safety of the officers or others, especially
given that he was walking away from the officers as previously
directed.  See id.  That he may have insulted the officers by using
profane language did not make him dangerous in any way.  Lastly, a
jury could conclude that Castro was not attempting to evade arrest
by flight.  See id.  He continued walking at the same pace after

---

defendants' statements with competent evidence of record, I do not
consider defendants' version of the events for the purpose of this
motion.

Panica told him to stop.  Though he may have been disobeying the
officer's orders, a reasonable officer would hardly consider
Castro's slow walk away from a group of police officers as an
earnest attempt to flee.  Accordingly, a jury could conclude that
Panica's high-speed tackle was excessive force, especially in light
of the significant injury that Castro suffered as a result.  Whether
the force used here was reasonable is therefore a matter that cannot
be resolved on summary judgment.

    **2.   Qualified Immunity**

Panica argues that even if the force he used to effect the
arrest was excessive, he is nonetheless entitled to qualified
immunity.  I disagree.

The doctrine of qualified immunity protects public officials
from personal liability that arises out of their performance of
discretionary functions.  Barton v. Clancy, 632 F.3d 9, 21 (1st Cir.
2011).  It attaches when officials "make reasonable but mistaken
judgments," and it shields from suit "all but the plainly
incompetent or those who knowingly violate the law."  Ashcroft v.
al-Kidd, 131 S. Ct. 2074, 2085 (2011) (citation omitted).  A court
engaging in a qualified immunity analysis must consider two things:
"(1) whether the facts alleged or shown by plaintiff make out a
violation of a constitutional right; and (2) if so, whether the
right was 'clearly established' at the time of the defendant's

alleged violation." Glik v. Cunniffe, 655 F.3d 78, 81 (1st Cir. 2011) (quoting Maldanado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009)).  The prongs may be resolved in any order.  Id.

The inquiry into whether a right was "clearly established" encompasses both the clarity of the law at the time of the violation, and whether, in light of the particular facts of the case, "a reasonable defendant would have understood that his conduct violated the plaintiff['s] constitutional rights."  Id. (quoting Barton, 632 F.3d at 22) (alteration in original).  "[T]he law is clearly established either if courts have previously ruled that materially similar conduct was unconstitutional, or if 'a general constitutional rule already identified in the decisional law [applies] with obvious clarity to the specific conduct' at issue." Jennings, 499 F.3d at 16 (quoting United States v. Lanier, 520 U.S. 259, 271 (1997)).

Here, if the encounter occurred as Castro's witnesses describe it, Panica's excessive conduct "was such an obvious violation of the Fourth Amendment's general prohibition on unreasonable force that a reasonable officer would not have required prior case law on point to be on notice that his conduct was unlawful."  Id. at 17.  Panica tackled Castro from behind while running at full speed and slammed Castro's head on the pavement.  The arrest was for a minor charge of disorderly conduct.  There was no evidence that Castro was armed or

10

dangerous in any way.  Nor was he attempting to flee in a manner
that precluded less intrusive means to effect the arrest.  He was
merely walking away at slow pace from a group of police officers.
Under these circumstances, the Graham factors overwhelmingly weigh
in one direction such that it would have been clear to a reasonable
officer that Panica's excessive force was an obvious violation of
the Supreme Court's well-established jurisprudence on the
prohibition of excessive force.  See 490 U.S. at 396.  Accordingly,
summary judgment on qualified immunity grounds is inappropriate.

## C.    Assault and Battery

Castro alleges that Officer Panica's conduct in arresting him
also constitutes assault and battery, and that the City is
vicariously liable for the tort.  Panica argues that the contact was
justified, and in the alternative, that he is entitled to official
immunity.  The City moves for summary judgment on all claims against
it without specific arguments as to this claim.  I address each
argument in turn.

### 1.    Justification Defense

In New Hampshire, justification is a complete defense to any
civil action, and "[a] law enforcement officer is justified in using
non-deadly force upon another person when and to the extent that he
reasonably believes it necessary to effect an arrest or
detention[.]"  N.H. Rev. Stat. Ann. §§ 627:5, 627:1.  Under this

statute, reasonableness is determined by an objective standard. New Hampshire v. Cunningham, 159 N.H. 103, 107 (2009). As previously discussed, if a jury were to accept Castro's version of the events, it could find that the amount of force Panica used to arrest Castro was not objectively reasonable. Accordingly, the justification defense does not entitle Panica to summary judgment on the state law claim.

### 2. Official Immunity

Panica argues in the alternative that he is entitled to official immunity from liability for assault and battery because his arrest of Castro involved a discretionary function that was within the scope of his official duties, and was neither wanton nor reckless under the circumstances. I conclude that Panica cannot avail himself of official immunity at this stage of the case.

"Official immunity protects government officials or employees from personal liability for discretionary actions taken by them within the course of their employment or official duties." Everitt v. Gen. Elec. Co., 156 N.H. 202, 214 (2007); see also N.H. Rev. Stat. Ann. § 99-D:1 (codifying common law doctrine of official immunity for officers and employees of the state). In assessing whether a police officer has official immunity, a three-prong standard governs: immunity attaches for "decisions, acts or omissions that are (1) made within the scope of [one's] official

12

duties while in the course of [his or her] employment; (2)
discretionary, rather than ministerial; and (3) not made in a wanton
or reckless manner." Everitt, 156 N.H. at 219.  It is evident that
Officer Panica's decision to arrest Castro satisfies the first two
prongs.  Thus, the only remaining issue is whether Panica acted
wantonly or recklessly when he tackled Castro from behind in order
to arrest him.

Although no New Hampshire Supreme Court case has addressed what
might constitute "wanton or reckless" conduct in the official
immunity context, in an advisory opinion primarily addressing the
withdrawal of sovereign immunity, the court explained that
government employees should be immune from prosecution if they act
with a reasonable belief in the lawfulness of their conduct.  See
Opinion of Justices, 126 N.H. 554, 564-65 (1985).  This court has
interpreted that advisory opinion as "conditioning official immunity
for intentional torts upon the employee's reasonable belief in the
lawfulness of his conduct." Soltani v. Smith, 812 F. Supp. 1280,
1300 (D.N.H. 1993).

Panica has not argued that the reasonable belief test differs
in any way from the qualified immunity test.  In fact, he merely
states in a conclusory fashion that his conduct was neither reckless
nor wanton.  Accordingly, for the reasons set forth above in my

discussion of qualified immunity, I also determine that Panica is not entitled to official immunity on the assault and battery claim.

### 3.   **Vicarious Liability**

Castro asserts that the City is vicariously liable for Panica's assault and battery.  The City seeks summary judgment as to all claims against it.  I deny the motion as to this claim.

Under the doctrine of *respondeat superior*, "an employer may be held vicariously responsible for the tortious acts of its employee if the employee was acting within the scope of his or her employment when his or her tortious act injured the plaintiff." Tessier v. Rockefeller, 162 N.H. 324, 342 (2011) (internal quotation marks omitted).  "Conduct falls within the scope of employment if:  (1) it is of the kind the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is actuated, at least in part, by a purpose to serve the employer." Id. at 342-43. (internal quotation marks and alterations omitted).  If the requisite elements are met, a municipality may be liable for intentional torts committed by its police officers.  See Daigle v. City of Portsmouth, 129 N.H. 561, 566 (1987).

Because the record does not support the conclusion that Panica was acting beyond the scope of his employment when he allegedly assaulted Castro, the City is not entitled to summary judgment on the claim.

14

**D.   Negligent Training and Supervision**

Castro asserts that the Chief of Police and the City are liable for negligently training and supervising Panica.  New Hampshire recognizes "a cause of action against an employer for negligently hiring or retaining an employee that the employer knew or should have known was unfit for the job so as to create a danger of harm to third persons."  Marquay v. Eno, 139 N.H. 708, 718 (1995).  To prevail on the claim, Castro would have to show that Panica was "incompetent, inexperienced or unskilled in a way that caused [his] injury, the risk of which was within the scope of [his] employment and was known to the employer-municipality."  Cutter v. Town of Farmington, 126 N.H. 836, 841 (1985).  He has presented no evidence that either the Chief or the City knew or should have known of a risk of Panica's incompetence in the use of force.  Rather, the uncontested evidence shows that Panica received annual training on the proper use of force to effect an arrest.  The City, moreover, is immune from liability arising out of its performance of discretionary functions such as decisions regarding the training and supervision of municipal employees.  See Austin v. Town of Brookline, No. 00-284-JD, 2001 WL 1117103, at *7 (D.N.H. Sept. 21, 2001); Hacking v. Town of Belmont, 143 N.H. 546, 550 (1999).  I therefore grant the motion for summary judgment on the negligent

training and supervision claim.[3]

## IV.   CONCLUSION

For the aforementioned reasons, I deny the motion for summary judgment (Doc. No. 8) on the excessive force claim and the assault and battery claim as to Officer Panica.  I also deny the City's motion on the claim that the City is vicariously liable for the assault and battery.  I grant the motion in all other respects.

SO ORDERED.


                                    /s/Paul Barbadoro
                                    Paul Barbadoro
                                    United States District Judge

July 17, 2012

Cc:  Richard J. Lehmann, Esq.
     Robert J. Meagher, Esq.

---

[3] In his objection, Castro only argues that Panica was negligent because he used an unreasonable amount of force to arrest him, a claim he did not assert in his complaint as a separate cause of action.  It is well settled that the negligence of a supervised actor, standing alone, is insufficient to impose liability on supervisors for negligent training and supervision.  See Cutter v. Town of Farmington, 126 N.H. 836, 841 (1985) (liability for negligent hiring, training, and supervision "results not merely from the agent's incompetence or carelessness, but from the principal's lack of prudence in selecting the person for the business in hand." (internal quotation marks omitted)).